**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO. 2:20-cr-106** |
| **Plaintiff,** | : | |
| **vs.** | : | **JUDGE SARGUS** |
| **DEONTE J. PEOPLES,** | : | |
| **Defendant.** | : | |

**SENTENCING MEMORANDUM OF DEFENDANT DEONTE J. PEOPLES**

Defendant Deonte J. Peoples respectfully submits the following Sentencing Memorandum for the Court's consideration pursuant to 18 U.S.C. §3553.

Respectfully submitted,
**Robert Cochran Law, LLC**

**/s/Robert J. Cochran**
ROBERT J. COCHRAN (0055658)
175 South Third Street, Suite 200
Columbus, OH 43215
P: (614) 484-7089
F: (614) 573-7164
Email: bob@rcochranlaw.com

*Counsel for Defendant Deonte J. Peoples*

**MEMORANDUM**

## I. INTRODUCTION

Defendant Deonte J. Peoples pled guilty to one count of Interference with Commerce by Robbery and one count of Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence. These are violations of 18 U.S.C. §§1951(a) and 924(c) respectively. The presentence report ("PSI") has been completed and submitted to the Court. There are no unresolved objections to the PSI. Sentencing is set for January 13, 2021.

This is an extremely serious offense. And the Court is required to consider the need to provide just punishment. 18 U.S.C. §3553(a)(2)(A). However, "[r]ehabilitation is [also] a goal of punishment," and "that goal cannot be served if a defendant can look forward to nothing beyond imprisonment." *United States v. Carvajal*, No. 04 Cr. 222 (AKH) (S.D.N.Y. Feb. 22, 2005), 2005 U.S. Dist. LEXIS 3076, at *15-16.

This is particularly true for a young person such as Deonte. Deonte is too young, and he has too much going for him, for society to simply "wash its hands" of him with a lengthy prison sentence. While Deonte's relative youth does not excuse his conduct, it is a significant mitigating factor.

This is also Deonte's first adult conviction (besides a traffic violation in Westerville Mayor's Court). Moreover, except for brief stays in juvenile detention, it also the first time Deonte has spent any serious time in jail. And serious it has been. Not only has he been in jail now for almost a year, but he was arrested shortly before the COVID-19 pandemic started. He later suffered the loss of his little brother while incarcerated.

Deonte is fortunate to have the love and support of a family, especially a committed and loving father. He is also a high school graduate. With the support of his family, as well as

vocational training and additional education, Deonte has the opportunity to be a law-abiding and productive citizen again.

Deonte has taken the first steps toward rehabilitation by pleading guilty and accepting responsibility for the offense. His involvement in the criminal justice system "aligns" with his addiction to prescription medication (PSI, ¶108) and he is "amenable to treatment." (*Id*. at ¶78.) Deonte understands a prison sentence will be imposed. However, a sentence below the applicable Guideline Range will be sufficient but not greater than necessary to comply with the purposes of sentencing based on the facts and circumstance of this case.

## II. REASONS IN SUPPORT OF DEONTE'S RECOMMENDED SENTENCE.

In determining the post-*Booker* sentence, the Court must begin sentencing proceedings by first correctly calculating the applicable Guideline range. *Gall v. United States*, 552 U.S. 38, 49 (2007). However, this Guideline range is only "the starting point and the initial benchmark." *Id*. The Court "may not presume that the Guideline range is reasonable." *Id*. at 50. A sentencing court is "free to make its own reasonable application of the 18 U.S.C. § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough v. United States*, 552 U.S. 85, 113 (2007) (Scalia, J., concurring). "[E]xtraordinary circumstances [are not required] to justify a sentence outside of the Guidelines range." *Gall* at 47. "Overall, the district court's task is to 'impose a sentence sufficient, but not greater than necessary, to comply with the purposes' of the statutory sentencing scheme." *United States v. Presley*, 547 F.3d 625, 630-631 (6th Cir. 2008).

### A. The Guideline Range Sentence.

According to the PSI, the total offense level is 20. Due to his juvenile court record, Deonte is in a Category III criminal history. As a result, Deonte's Guideline Range sentence is 41-51 months on Count One and 84 months, consecutive, on Count Two.

The PSR contains one enhancement – the 1-point enhancement under U.S.S.G. § 2B3.1(b)(6) – that the parties did not contemplate when negotiating the resolution of this case. If the Court enforces the Plea Agreement, the Total Offense Level is 19, and the accompanying Guideline range sentence on Count 1 is 37–46 months.

As for supervised release, the robbery count carries term of 1 to 3 years and the §924(c) count carries a term of 2 to 5 years. Restitution is recommended in the amount $4,605. Because Deonte is penniless and in jail, the PSR does not recommend a fine. (PSI, ¶81.)

### B. Balancing Deonte's history and characteristics with the nature and circumstances of the offense supports a lesser sentence.

Deonte recognizes the seriousness of the offense. Nevertheless, there are significant mitigating factors regarding his conduct.

#### 1. Deonte's history and characteristics.

Deonte is only 19 years old, having been born on February 6, 2001. (PSI, ¶61.) He was born in Germany to David Peoples II and Casaundra Lee. (*Id*.) Deonte's father was on active duty in the U.S. military when Deonte was born. (*Id*.) The family moved to Columbus when Deonte was two-years old and Deonte has lived in Columbus since then. (*Id*.)

Deonte's parents separated when he was five years old. (PSI, ¶63.) His father received full custody of him, but he continued to have daily contact with his mother. (*Id.*)

Deonte is a high school graduate. (PSI, ¶79.) However, he struggled with academics and received special education services through an individualized education program. (*Id*. at ¶68.) In particular, he had difficulty with reading comprehension. (*Id*.) ) Deonte would like to pursue a college degree while in prison and obtain vocational training. As a result, Deonte requests the Court recommend he serve his sentence in or near Ohio at a facility where he can pursue a college degree.

Deonte has demonstrated an ability to maintain employment. He was employed at his father's cleaning company, where he worked for several months before his arrest. (PSR, ¶80.) He worked 35 hours per week and earned $11 per hour. (*Id*.)

Deonte has a substance abuse problem that contributed to this offense. (PSR, ¶¶75-78; 108.) He experimented with marijuana at the age of 15 and used the drug daily until his arrest on this case. (*Id.* at ¶75.) He also started abusing Xanax and Percocet at age 17, and continued to abuse these drugs until he was arrested. (*Id*. at ¶77.) As noted in the PSI, Deonte's "involvement in the criminal justice system aligns with the timeframe he reported regarding the onset of his addiction to prescription medication." (*Id*. at ¶108.) Deonte has never received any substance abuse treatment. He is "amenable to treatment," (*Id*. at ¶78), as well as mental health counseling.

Deonte is fortunate in that he has the love and support of his family. (See, *e.g.*, PSR, ¶¶70-71; Exhibit A.) Deonte believes he has a close relationship with both his parents. (*Id*. at ¶63.) He also has a close relationship with his siblings. (*Id*. at ¶62.)

Deonte's father, in particular, is committed to helping Deonte. He has spoken to Deonte daily since his arrest and engaged in numerous conversations with Deonte about his addiction and plans for his life moving forward. (PSI, ¶70.) In a letter of support (attached as Exhibit A), Deonte's father wrote:

> Deonte is not a lost cause. He is one of the most caring people that you will meet. He finished high school, and God willing, one day will finish college.
>
> ***
>
> I love Deonte, but I'm sure he did not always feel that way. I have to be honest; I was very hard on my son. I understand he made his own choices, but I need you to know life wasn't easy for Deonte.

(Exhibit A.)

Deonte's father also has a plans for Deonte's future once he is released. He wrote:

> We have started a cleaning service that Deonte can run upon his release. A business consultant named Shawn Bagley has agreed to take Deonte under his wing and teach him how to succeed in business. Pastor Montrail Curry is committed to do whatever it takes to help keep Deonte from committing any crimes upon release. I have served my country honorable and have never asked for a thing in return, but in your honor, I am begging you to give Deonte the minimum sentence.

(Exhibit A.)

Deonte's father also reported that Deonte has a "wealth of support through his family, pastor, and family friends." (PSI, ¶71.). Deonte's pastor, Montrail Curry, Sr., wrote a letter of support for Deonte. Pastor Curry has been mentoring Deonte "on and off for the past 10+ years." (Exhibit B.) Paster Curry wrote:

> Deonte sincerely regrets his actions and vows never to repeat them. I believe him because I know him well, and he understands that life is too short to make foolish decisions that ultimately will keep you from family during difficult times, such as the death of his kid brother, with whom he was very close. I vow to continue to mentor Deonte and help to build his character, so that he makes better decisions while he is incarcerated and once, he is released.

(*Id*.)

The support of his family, especially his father, is a significant mitigating factor. It also increases Deonte's potential for rehabilitation.

**2. The nature and circumstances of the offense.**

The seriousness of the offense and the trauma suffered by the victims is undisputed and recognized and acknowledged by Deonte. Fortunately, nobody was physically injured during the robbery.

Deonte has accepted responsibility for the offense and acknowledged the harm he caused the victims:

> The defendant attributed his conduct to being "young and dumb." He stated he was not thinking clearly the day of March 5, 2020 and committed the offense with no regard for the harm it would cause. Peoples expressed remorse for the fear he instilled in the victims and acknowledged his actions will have lasting affects for them and their loved

> ones. The defendant also acknowledged the hurt his actions have caused his own family, stating he has failed by setting a poor example for his younger brother. Based on this information, it appears the defendant has accepted responsibility for his conduct.

(PSI, ¶31.)

It is important to consider as well that the robbery occurred on March 5, 2020, approximately one month after Deonte turned 19. (PSI, ¶12.) While Deonte's relative youth does not excuse his behavior, it is a mitigating factor. *See, e.g., United States v. Johnson*, No. 98-CR-420 (JG) (E.D.N.Y. Oct. 10, 2012), 2012 U.S. Dist. LEXIS 146152, at *32 (Noting that defendant's youth at the time of the offense is a "mitigating factor that reduces his culpability and increases his potential for rehabilitation.")

"As the Supreme Court has recognized, youthful offenders often suffer from impulsivity, recklessness, susceptibility to peer pressure, and lack of control over their external surroundings – **qualities that 'do not disappear when and individual turns 18**.'" (Emphasis added.) *Id.*, quoting *Roper v. Simmons*, 543 U.S. 551, 574 (2005). Indeed, the *Johnson* defendant was in his "early twenties" when he sold numerous guns to members of a drug dealing operation in exchange for cash and cocaine. *Johnson*, 2012 U.S. Dist. LEXIS 146152, at *1-2. Deonte is even younger, just 19.

The youth and immaturity of the defendants is reflected in the circumstances of the offense. Other than wearing masks, gloves, and plastic bags over their shoes (PSI, ¶12), the offense did not involve a lot of advance planning, nor was it particularly sophisticated.

First, the defendants selected a pawn shop that was "**uniquely situated** with several police departments and local municipalities in close proximity." (Emphasis added.) (Exhibit C, ATF Report of Investigation No. 1, ¶3.) The responding agencies eventually included three municipal police departments, the Franklin County Sheriff, and the ATF. (*Id.*)

Second, they selected a pawn shop that was covered inside and out by security cameras and then committed the offense during daylight hours. Thus, the police had a clear, unobstructed view of Deonte's vehicle from the security cameras because the defendants parked in front of the pawn shop.

Third, Deonte used a vehicle that the police "quickly recognized." (PSI, ¶14.) The vehicle also had "significant and distinctive front-end and other damage," which made it easy for the police to match to Deonte's car. (Complaint, ECF No. 1, ¶5.)

Fourth, the defendants returned immediately to Deonte's home, leaving the get-away-vehicle parked in the driveway where it was easily observed by the police who showed up shortly after the robbery occurred. (PSI, ¶14; Exhibit D, ATF Report of Investigation No. 5, ¶¶2-5.) The robbery occurred shortly after 2 pm (PSI, ¶12.) Undercover police officers had Deonte's house and car under surveillance by at least 3:15 pm, if not sooner. (See, e.g., Exhibit D, ATF Report of Investigation No. 5, ¶6.) By approximately 4 pm, the defendants were in custody. (See Exhibit E, Blendon Twp. PD Official Investigative Notes, Arrest Time 16:00 hours.) The defendants also left their masks in the car, as well as jewelry with sales tags from the pawn shop. (Complaint, ECF No. 1, ¶7.)

Finally, before their arrest, the defendants were observed attempting to flee the property. (Complaint, ECF No. 1, ¶6.) The police later recovered a suitcase with the stolen guns and jewelry on the other side of fence that the defendants were earlier seen jumping or attempting to jump over when they realized the police were at the house. (*Id*.)

Thus, the circumstances of the offense demonstrate to a degree the impulsivity and recklessness of youth, as opposed to hardened, career criminals.

### C. The sentence affords adequate deterrence to criminal conduct and protects the public. 18 U.S.C. §3553(a)(2)(B), and (C).

There are two basic types of deterrence, general and specific. General deterrence is designed to prevent crime in the general population. Specific deterrence is designed to prevent the individual from committing the crime in the future. A below Guideline Range sentence satisfies both, in addition to protecting the public.

#### 1. Specific deterrence.

The likelihood of Deonte re-offending is low. First, Deonte has accepted responsibility for the offense and acknowledged the harm he caused the victims. (PSI, ¶31.) This is an important step in the rehabilitative process and is evidence of Deonte's remorse and commitment to a law-abiding life. So too was Deonte's decision to plead guilty early in the case.

Second, this is Deonte's first adult criminal conviction. Except for brief stays in juvenile detention (PSI, ¶¶51-52), Deonte has never served any time in jail. Under these circumstances, a lesser period of imprisonment will accomplish the goal of deterrence and protecting the public. *See United States v. Pelloski*, 31 F. Supp. 3d 952, 962 (S.D. Ohio 2014), quoting *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.")

Indeed, more severe punishments do not 'chasten' individuals convicted of crimes, and prisons may exacerbate recidivism. National Institute of Justice, Five Things About Deterrence, May 2016.[1]

---

[1] Available at https://nij.gov/five-things/pages/deterrence.aspx (last accessed December 31, 2020).

Third, Deonte will be under Court supervision for up to 5 years following his release from prison. He will be subject to conditions such as restrictions on travel, and restrictions on where he can live and who he can live with. He will also be required to undergo drug testing, substance abuse treatment, and to obtain and maintain full-time employment. If Deonte violates any condition of supervised release, the Court can impose a sentence of up to five years. 18 U.S.C. §3583(e)(3). If Deonte possesses a controlled substance or a firearm, or he refuses to comply with drug testing, he faces **mandatory** revocation of his supervised release. 18 U.S.C. §3583(g). These conditions, and the consequences of violating them, are specifically designed to deter future crime, as well as compel compliance with the conditions of supervised release.

Accordingly, the sentence protects the public and, thus, satisfies the goal of specific deterrence.

**2. General deterrence.**

As for general deterrence, "there is no justice in imposing a sentence merely to make an example out of a defendant." *United States v. Musgrave*, 647 Fed. Appx. 529, 533 (6th Cir. 2016) (quoting J. Black, District Judge). *See, also,* 18 U.S.C. 3582(a) ("[I]mprisonment is not an appropriate means of promoting correction and rehabilitation"). Moreover, "the certainty of being caught is a vastly more powerful deterrent than the punishment." National Institute of Justice, Five Things About Deterrence, May 2016.[2] As described above, Deonte was in custody within hours of the robbery. The relatively quick apprehension serves as a more powerful deterrent to Deonte and the public than a long prison sentence.

---

[2] *Id*.

**D. The sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. 18 U.S.C. §3553(a)(2)(A), (B), and (C).**

If the Court imposes a below Guideline Range sentence, the seriousness of the offense will not be diminished. This is an extremely serious offense, and a prison sentence is warranted. For the reasons set forth above, a below Guideline Range sentence is warranted based on Deonte's history and characteristics and the circumstances of this case.

In determining whether the sentence provides just punishment, the Court should also consider the circumstances of Deonte's detention and incarceration. He was arrested shortly before the COVID-19 pandemic started and has been incarcerated since then. This means he is serving his sentence during the largest global health crisis in over 100 years, a crisis that is particularly dangerous for prison inmates. Although Deonte is fortunate to be young and, thus far, blessed with good health, he still lives with the unique risk and threat posed by the virus to inmates who, because of the realities of prison life, are unable to protect themselves from the virus. Serving time in a local jail (especially the Franklin County Jail) and federal prison is difficult enough under normal circumstances. However, Deonte has been and will be incarcerated during a pandemic.

Deonte's little brother also died while Deonte was in jail, which has been difficult on Deonte. (PSI, ¶64.) Thus, in terms of incarceration, it is beyond question that Deonte has been and will be punished for this offense.

**E. The sentence will not result in unwarranted sentencing discrepancies.**

18 U.S.C. §3553(a)(6) speaks to the need to avoid "unwarranted sentencing discrepancies." However, §3553(a)(6) "does not advocate for *uniformity* in sentencing." (Emphasis *sic*.) *United States v. Jimenez-DeGarcia*, 481 F.Supp.2d 946, 948, fn 4 (E.D. Wis. 2007). Rather, it counsels against *unwarranted* disparity, *i.e.*, those disparities lacking justification under the factors set forth in § 3553(a). (Emphasis *sic*.) *Id*.

Here, the proposed sentence is justified as described above based on the §3553(a) factors as applied to this case. Accordingly, the sentence will not result in unwarranted sentencing discrepancies.

Additionally, a below Guideline Range sentence is consistent with sentences imposed in robbery and firearm cases nationally. For fiscal year 2019, only 39% of robbery cases received a sentence within the Guideline Range. *See* 2019 Sourcebook of Federal Sentencing Statistics, 2019 Sentences Under the Guidelines Manual and Variances, Table 31 (Sentence Imposed Relative to the Guideline Range By Type of Crime).[3] As for firearms offense, only 54.5% received a sentence within the Guideline Range. *Id*.

Accordingly, the sentence proposed here will not result in unwarranted sentencing discrepancies.

**F. The sentence provides Deonte with needed educational or vocational training, medical care, other correctional treatment in the most cost-effective manner.**

Deonte does not require medical treatment while in the Bureau of Prisons. He does, however, request drug treatment (see below), mental health counseling, vocational training, and the opportunity to pursue a college degree. Notably, Deonte's participation in a drug treatment program will significantly reduce his risk of recidivism. See, *e.g.*, *United States v. Newhouse*, 919 F.Supp.2d 955, 977 (N.D. Iowa 2013) (noting that "drug treatment works to rehabilitate offenders and thus reduce recidivism").

**G. RDAP AND LOCATION OF CONFINEMENT**

Finally, Deonte respectfully requests the Court include in the Judgment recommendations that he serve his sentence in or near Ohio so that he can maintain contact with his family and that

---

[3] Available at 2019 Annual Report and Sourcebook of Federal Sentencing Statistics (ussc.gov) (last accessed 12/30/20).

he be allowed to participate in the Residential Drug Abuse Treatment Program while incarcerated. Probation recommends that Deonte participate in a treatment while confined (PSI, Sentencing Recommendation, p. 2 of 3.) Deonte's involvement in the criminal justice system "aligns" with the onset of his addiction to prescription medication. (PSI, ¶108.)

## III. CONCLUSION

For the reasons set forth above, Defendant Deonte Peoples respectfully requests the Court impose a below Guideline Range sentence. In addition, Deonte respectfully requests the Court include in the Judgement of Conviction recommendations that (1) he be allowed to participate in the Residential Drug Abuse Treatment Program, (2) receive mental health counseling, (3) vocational training, and (4) and that he serve his sentence in or near Ohio at a facility where he can pursue a college degree.

Respectfully submitted,
**Robert Cochran Law, LLC**

**/s/Robert J. Cochran**
ROBERT J. COCHRAN (0055658)
175 South Third Street, Suite 200
Columbus, OH 43215
P: (614) 484-7089
F: (614) 573-7164
Email: bob@rcochranlaw.com

*Counsel for Defendant Deonte J. Peoples*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 201, a true copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

**/s/Robert J. Cochran**
ROBERT J. COCHRAN (0055658)